# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | No. 3:11cr194 |
| | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **KRISHNA MOTE,** | : | |
|       **Defendant** | : | |

## **MEMORANDUM**

Before the court is Defendant Krishna Mote's motion for a new trial. (Doc. 113). This matter is briefed and ripe for disposition.

**Background**

On June 7, 2011, a grand jury sitting in this district returned a two-count indictment against Defendant Krishna Mote (hereinafter "defendant"). (Doc. 1). Count I charged defendant with conspiracy to distribute, and possession with intent to distribute, more than 280 grams of cocaine base ("crack cocaine") in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Count II charged defendant with distributing, and possessing with the intent to distribute, crack cocaine as an aider and abettor in violation of 21 U.S.C. § 841(a) and 18 U.S.C. § 2. The court issued an arrest warrant for defendant on the same day the grand jury returned the indictment. (Doc. 4). The government arrested defendant, and he made his initial appearance on September 22, 2011. (Doc. 11). The court ordered

defendant detained, and he entered a not guilty plea. (Docs. 10, 13).

After several continuances, defendant proceeded to trial on December 4, 2012, wherein he represented himself.[1] On December 6, 2012, at the conclusion of the third trial day, the jury returned guilty verdicts on both counts. (Doc. 103). With regards to Count I, the jury found that the quantity of crack cocaine involved in the conspiracy exceeded 280 grams and that the quantity of cocaine exceeded 500 grams. (Id.)

In a letter dated December 9, 2012, defendant requested this court for a "sentencing Attorney." (Doc. 107). On December 17, 2012, the court received a pro se post-trial motion for a new trial that defendant dated December 11, 2012. (Doc. 108). The court granted defendant's request for counsel and reappointed Attorney Reish. (Doc. 109). On December 19, 2012, the court denied defendant's motion for a new trial without prejudice to counsel filing an amended motion within fourteen days. (Doc. 110). Defense counsel filed a motion for a new trial and a brief in support

---

[1] The court initially appointed Attorney Charles Witaconis to represent defendant. (Doc. 9). Defendant expressed his displeasure with attorney Witaconis, (Doc. 64), and the court replaced Attorney Witaconis with Attorney Brandon Reish, (Doc. 70). On the eve of trial, and despite the repeated warnings by this court of the difficulty pro se litigants face, defendant exercised his constitutional right to proceed pro se at trial. (Docs. 88, 95). The court appointed Attorney Reish to serve as standby counsel for the duration of defendant's trial. (Doc. 95).

thereof. (Docs. 113, 121). The government filed a brief in opposition to defendant's motion, (Doc. 123), bringing this case to its current posture.

**Legal Standard**

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). The defendant bears a heavy burden to demonstrate a new trial ought to be granted because the law presumes the verdict against him to be valid. See United States v. McCourty, 562 F.3d 458, 475-76 (2d Cir. 2009), cert. denied 130 S. Ct. 1012 (2009); WRIGHT & WELLING, FEDERAL PRACTICE & PROCEDURE § 581 (4th ed. 2011).

The Third Circuit Court of Appeals has cautioned district courts that Rule 33 motions are "not favored and should only be 'granted sparingly and only in exceptional cases.'" United States v. Silveus, 542 F.3d 993, 1005 (3d Cir. 2008) (quoting Gov't of Virgin Islands v. Derricks, 810 F.2d 50, 55 (3d Cir. 1987)). Exceptional cases include those in which trial errors, "either individually or in combination, 'so infected the jury's deliberations that they had a substantial influence on the outcome of the trial.'" United States v. Amirnazmi, 648 F. Supp. 2d 718, 719-20 (E.D. Pa. 2009) (quoting United States v. Thornton, 1 F.3d 149, 156 (3d Cir. 1993)).

3

Exceptional cases also consist of those in which the jury verdict is against the weight of the evidence.  See Tibbs v. Florida, 457 U.S. 31, 38 n.12 (1982) ("some federal courts have interpreted Rule 33 of the Federal Rules of Criminal Procedure, which authorizes a new trial 'if required in the interest of justice,' to permit the trial judge to set aside a conviction that is against the weight of the evidence.").  A district court is only empowered to grant a new trial based upon the verdict being contrary to the weight of the evidence when "'it believes that there is a serious danger that a miscarriage of justice has occurred–that is, that an innocent person has been convicted.'" United States v. Davis, 397 F.3d 173, 181 (3d Cir. 2005) (quoting United States v. Johnson, 302 F.3d 139, 150 (3d Cir. 2002)).  Unlike an insufficiency of the evidence claim, in which the court views the evidence in the light most favorable to the government, a Rule 33 motion permits the court to exercise its own judgment in assessing the government's case.  See Johnson, 302 F.3d at 150 (citing United States v. Lacey, 219 F.3d 779, 783-84 (8th Cir. 2000); United States v. Ashworth, 836 F.2d 260, 266 (6th Cir. 1988)).

**Discussion**

Defendant presents two grounds in support of his motion for a new trial. First, defendant asserts that the circumstantial evidence submitted to the jury was insufficient to prove defendant's guilt beyond a reasonable doubt. Second, defendant contends a new trial is warranted because the court erred in admitting statements during the first day of the trial pursuant to the coconspirator exclusion to the hearsay rule. The court will evaluate both grounds in turn.

### A. Adequacy of the Evidence Presented at Trial

Defendant first contends that the evidence submitted to the jury was insufficient to establish guilt. In support of this contention, defendant, without providing any citations to the record, asserts the following:

> 1. there were no drugs recovered directly from Defendant[,]
> 2. there was no marked money recovered from Defendant,
> 3. the marked money was labeled as relating to Jenna Ziegenfus on the bag submitted by Detective John Gill, and
> 4. Defendant was merely present at the scene.

(Doc. 121, Br. in Supp. of Mot. for New Trial at 3-4). Defendant analogizes his case to United States v. Cartwright, 359 F.3d 281 (3d Cir. 2004). In Cartwright, the defendant was convicted of participating in a drug conspiracy. Id. at 285. The jury in Cartwright was presented with evidence that (1) law enforcement officers saw the defendant with a drug dealer

5

during a sting operation, (2) the defendant possessed a fire arm, $180 in cash, a text messaging device and cellular phone and (3) the defendant did not possess keys to a vehicle of his own.  Id. at 288.  Given the circumstantial evidence presented at trial, the Third Circuit Court of Appeals held that there was "simply no evidence in this record from which to infer a conclusion that Cartwright had knowledge of the nature of the transaction."  Id. at 290.  The circuit court identified that the jury could only speculate as to the defendant's knowledge.  Id. at 189.

In the instant case, defendant asserts that, like the defendant in Cartwright, he was convicted because he was in the wrong place during a police operation.  Defendant's recollection of the evidence presented at trial, however, appears to be incomplete.  Even though the government did not rely on a significant amount of physical evidence at trial,[2] the court finds that there was ample evidence in the form of coconspirator testimony from which the jury could conclude that defendant knew of and actively

---

[2] At trial, the government presented seized drug paraphernalia that witnesses connected to defendant.  Such items of paraphernalia presented as evidence included a scale, (Doc. 129, N.T. 12/5/12 at 54, 79, 111), small plastic bags, (id. at 111, 113), and an AquaNet can with a false bottom that defendant used to store crack cocaine, (id. at 54, 78, 111-112, 117; Doc. 128, N.T. 12/4/12 at 150).

6

participated in a conspiracy to distribute crack cocaine.[3] In fact, no fewer than five witnesses testified at trial that they served as intermediaries for drug transactions defendant conducted in Lehighton, Pennsylvania.[4] Moreover, two witnesses at trial testified that they worked with defendant to import crack cocaine into the Lehighton area and, like defendant,

---

[3] To establish a drug conspiracy under 21 U.S.C. § 846, the government must establish "'(1) a shared unity of purpose, (2) an intent to achieve a common illegal goal, and (3) an agreement to work toward that goal, which [the defendant] knowingly joined.'" United States v. Claxton, 685 F.3d 300, 305 (3d Cir. 2012) (quoting United States v. Boria, 592 F.3d 476, 481 (3d Cir. 2010)). As the court explains above, the weight of the evidence presented at trial is consistent with the verdict, and the court finds that the government did not clearly fail to establish its burden with respect to demonstrating a drug conspiracy.

[4] During the first day of trial, Robert George, an admitted coconspirator, testified that he sold crack cocaine for defendant out of his residence in Lehighton, Pennsylvania. (Doc. 128, N.T. 12/4/12 at 136-38). George testified that he served as a go between when drug customers would come to his residence to purchase crack cocaine from defendant. (Id. at 139). George told the jury that, as a part of their arrangement, defendant paid George 20% of the revenue he received from selling crack cocaine out of George's residence. (Id. at 138). During the second day of trial, the government presented four additional coconspirators, Wanda Andrews, Marianne Houser, Paul Lopatovsky and Jeanna Ziegenfus. These coconspirators testified that, at various times, they allowed defendant to sell crack cocaine out of their respective residences in Lehighton, Pennsylvania in exchange for a share of the revenue, paid in either money or drugs. (Doc. 129, N.T. 12/5/12 at 7-10, 30-31, 50-52, 56, 76-77, 80).

distributed it from the residences of local drug users.[5]

Thus, the court finds that the evidence submitted to the jury was sufficient for the jury to arrive at the conclusion that defendant participated in a drug conspiracy. The coconspirators that testified at trial told the jury that defendant participated in a scheme to import crack cocaine into Lehighton, Pennsylvania and distribute it from the residences of local drug users. Coconspirator testimony identifying an individual as a member of the conspiracy, coupled with circumstantial evidence that the same individual participated in the conspiracy, presents a jury with sufficient evidence to determine whether that individual participated in a drug conspiracy beyond a reasonable doubt. See, e.g., United States v. Claxton, 685 F.3d 300, 312-13 (3d Cir. 2012) (holding that a jury rationally decided guilt on a drug conspiracy charge when the defendant was identified as a member of a well run drug trafficking organization and when

---

[5] Maurice Laseter testified that he recruited defendant to participate in his plan to distribute crack cocaine from the residences of local drug users in Lehighton, Pennsylvania. (Doc. 128, N.T. 12/4/12 at 74). Laseter also told the jury that he initially supplied defendant with crack cocaine to sell in Lehighton. (Id. at 76). The jury also heard from Imani Simelani, who was also recruited by Laseter to sell crack cocaine in Lehighton. (Id. at 101). Laseter put Simelani in contact with Wanda Andrews, as he had done for defendant. (Id. at 103). Although Simelani told the jury he eventually competed with defendant to sell drugs in the Lehighton area, he also stated that they initially agreed to sell drugs on different days of the week. (Id. at 106-07, 111).

8

the government presented circumstantial evidence that the defendant did the organization's bidding); United States v. Boria, 592 F.3d 476, 485-86 (3d Cir. 2010) (holding that a coconspirator's statements, combined with suspicious circumstances, was sufficient for the jury to conclude that the defendant knew of the controlled substance involved in a transaction).  The court will not disrupt the verdict in this case because it is not against the clear weight of the evidence.  Accordingly, the court is unable to grant defendant's motion for a new trial.

**B. Coconspirator Exclusion to the Hearsay Rule**

Defendant also requests a new trial on the grounds that this court erred in allowing statements to be admitted into evidence pursuant to the coconspirator exclusion to the rule against hearsay.  The government disagrees with defendant's contention and maintains that the Federal Rules of Evidence permit the court to admit statements made by defendant's coconspirators.

Under the Federal Rules of Evidence, hearsay statements are not admissible unless they are otherwise permitted into evidence by a federal statute or rule.  FED. R. EVID. 802.  Hearsay is defined in the Federal Rules of Evidence as a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to

prove the truth of the matter asserted in the statement." FED. R. EVID. 801(c).  The Federal Rules, however, exclude from the definition of hearsay any statements offered against an opposing party that were made "by the party's coconspirator during and in furtherance of the conspiracy." FED. R. EVID. 801(d)(2)(E).  Thus, statements by coconspirators are, by definition, not hearsay and, assuming relevance, admissible for the truth of the matter asserted.

The Third Circuit Court of Appeals has long held that statements by coconspirators are admissible as non-hearsay if the following three conditions are met: "(1) there must be independent evidence establishing the existence of the conspiracy and connecting the declarant and defendant to it; (2) the statement must have been in furtherance of the conspiracy; and (3) it must have been made during the course of the conspiracy."  United States v. Ammar, 714 F.2d 238, 245 (3d Cir. 1983) (citing United States v. Perez, 658 F.2d 654, 658 (9th Cir. 1981)).  With respect to the third condition, a "conspiracy is presumed to continue until its objective is achieved."  Ammar, 714 F.2d at 253.  Moreover, once the government establishes the existence of a conspiracy, the burden shifts to the defendant to prove that the conspiracy terminated at the time the coconspirator declarant made the out of court statement.  See United

States v. Local 560 (I.B.T.), 974 F.2d 315, 338 (3d Cir. 1992) (citing United States v. Janotti, 729 F.2d 213, 221 (3d Cir. 1984)).

In the instant case, defendant contends that the out of court statements were improperly admitted because the preponderance of evidence presented at trial did not establish that a conspiracy existed at the time those statements were made. Defendant does not cite any specific statements admitted into evidence by this court in his argument. Rather, defendant cites the law as it pertains to the coconspirator exclusion to the hearsay rule and argues, in part, as follows:

> In this case, at least one of the Government's own witnesses conceded that he was not conspiring with Defendant at the time that certain statements were made; rather, Defendant was merely a competitor of this witness. Therefore, all three of the requirements were not met by the Government regarding any statements made concerning an alleged conspiracy between Defendants Maurice Lassiter [sic], or Imani Similani [sic]. . . . Here, Defendant was a competitor of Maurice Lassiter [sic] and Imani Similani [sic] at the point in time that many of the hearsay statements were made.

(Doc. 121, Br. in Supp. of Mot. for New Trial at 5). The court disagrees with defendant and confirms its previous finding that the out of court statements admitted into evidence met the elements of the coconspirator exclusion to the rule against hearsay.

Although defendant identified no instances in which the court admitted out of court statements based in the coconspirator exclusion, the

court was able to identify three. First, during the testimony of Maurice Laseter, Laseter testified as to the deterioration of his relationship with defendant, and, within that context, he described a phone conversation he had knowledge of between Brenda McFarland and Wanda Andrews.[6] The preponderance of the evidence showed that McFarland and Andrews served as intermediaries in the same drug conspiracy defendant participated in as a distributor. McFarland and Andrews' conversation was in furtherance of the conspiracy as it involved the coordination and location

---

[6] Laseter's trial testimony regarding this out of court statement was as follows:

> The Witness: This is how me and him fell out. He didn't want to hustle anymore, he was moving on, whatever, whatever. So I said, Okay, no problem, give me some time to get up there . . . . For the first couple of months, it was going good, but he came to me he said he didn't want to do it no more. I said, all right.
>
> Then I bring Imani up there, you understand. Now, he say, why is business so slow? I'm like, what? Business is real slow? So Brenda ended up getting on the phone, calling one of her friends. So she was like - - Brenda - - let me slow down because I'm getting upset. Let me just take my time.
>
> Brenda calls Wanda. Why didn't you come over here? What's going on? She said, like, Kris is over here. She said, Kris is over there? Kris is over there at Wanda's house.

(Doc. 128, N.T. 12/4/12 at 81).

of crack cocaine dealers in Lehighton. The statement at issue also satisfies the final element because defendant and Laseter were actively involved in a conspiracy that used drug intermediaries, such as McFarland and Andrews, at the time the statement was made.

The second instance in which the court admitted a statement pursuant to the coconspirator exclusion was during Imani Simelani's testimony. Simelani testified that Jim Searfoss told him on one occasion that Searfoss was working for defendant on a particular day and not for Simelani.[7] The court finds by a preponderance of the evidence that Searfoss served as an intermediary for both Simelani and defendant, thus he and defendant were members of the same conspiracy. The out of court statement admitted into evidence involves the coordination between the respective crack cocaine dealers and their intermediaries, therefore, the court finds that the statement at issue was made in furtherance and during the conspiracy.

---

[7] Simelani's trial testimony regarding this out of court statement was as follows:

    Q. How did you know that?
    A. Everybody would talk about it, Jim would tell me that I'm not working for you today, I'm working for Kris.

(Doc. 128, N.T.12/4/12 at 117).

13

During Susan Hunsicker's trial testimony, the court admitted a third statement pursuant to the coconspirator exclusion to the hearsay rule. Hunsicker told the jury that, on one occasion, Robert George stated that Simelani and Hunsicker could not remain at George's residence because defendant was on his way and it was "his day."[8] George is a member of the conspiracy and served as an intermediary for both Simelani and defendant. George's statement strikes at the heart of the alleged conspiracy–that Simelani and defendant agreed to split days in which they would deal drugs from the residences of drug users in Lehighton. This statement was made during the conspiracy and in furtherance of ensuring cooperation among the conspirators. Accordingly, the court confirms our previous decision that the above referenced statements meet, by a preponderance of the evidence, the threshold needed for the admission of out of court coconspirator statements.

---

[8] Hunsicker's trial testimony regarding this out of court statement was as follows:

> Q. Now, did you ever personally encounter that situation at a location?
> A. Only one time when we were at Bobby George's house, me and "E" were there, and Bobby said, you have to leave because Kris is on his way, you're not supposed to be here, it's his day.

(Doc. 128, N.T. 12/4/12 at 128).

14

In his brief, defendant implies that he must have abandoned any conspiracy with Simelani and Lester because, at some point in time, they viewed defendant as a competitor. Defendant's arguments, however, focus on Laseter and Simelani and ignore the out of court declarants at issue–Brenda McFarland, Wanda Andrews, Jim Searfoss and Robert George.[9] The allegation of intermittent disagreements among Simelani, Laseter and defendant does not prohibit the admission of out of court statements made by the coconspirators defendant used as intermediaries. Thus, defendant has failed to meet his burden with respect to establishing that he abandoned the conspiracy.

Moreover, the court notes that, even if the out of court statements at issue were admitted improperly, defendant has failed to establish that these alleged errors influenced the jury to such a degree as to affect the outcome of the case. As the court stated above, to obtain a new trial, a defendant must show that a trial error "'so infected the jury's deliberations

---

[9] Even though Simelani and Laseter were not the out of court declarants with respect to the statements the court admitted pursuant to the coconspirator exception, the court nonetheless notes that it is unmoved by defendant's argument that Simelani and Laseter were his competitors and not his coconspirators. Although Simelani, Laseter and defendant occasionally disagreed and failed to honor their agreed schedule, their unity of purpose remained, and, at the very least, they were attempting to smooth over the cracks in their conspiracy at the time the statements at issue were made.

15

that they had a substantial influence on the outcome of the trial.'" Amirnazmi, 648 F. Supp. 2d at 719-20 (quoting Thornton, 1 F.3d at 156); see also United States v. Bell, 584 F.3d 478, 486 (2d Cir. 2009) (observing that courts will not grant a new trial unless the inadmissible evidence "'was so clearly prejudicial to the outcome of the trial that we are convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice. We measure prejudice by assessing error in light of the record as a whole.'" (quoting Phillips v. Bowen, 278 F.3d 103, 111 (2d Cir. 2002))).

In this case, the statements defendant generally challenges from the first day of trial are insignificant compared to the weight of the evidence presented by the government during the course of the trial. The court is far from convinced that the admission of these statements caused a miscarriage of justice. Thus, the court will deny defendant's request for a new trial on the grounds that the court improperly admitted hearsay evidence.

**Conclusion**

For the reasons stated above, the court will deny defendant's motion for a new trial. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | No. 3:11cr194 |
| | : | |
| | : | (Judge Munley) |
| **v.** | : | |
| | : | |
| **KRISHNA MOTE,** | : | |
| Defendant | : | |

## ORDER

**AND NOW**, to wit, on this 7th day of May 2013, defendant's motion for a new trial pursuant to Federal Rule of Criminal Procedure 33 (Doc. 113) is hereby **DENIED**.

BY THE COURT:

s/ James M. Munley
**JUDGE JAMES M. MUNLEY**
**United States District Court**